*In re* SHASSBERGER.

1. PAUPERS—DEPENDENT PARENT—STATUTES.
Woman 84 years of age, practically blind, feeble physically and mentally, and in need of personal attention which she is unable to pay for, and which son cannot give to her in his own home, is dependent person within meaning of statute requiring children to support dependent parents (2 Comp. Laws 1929, § 8226).

2. SAME—ABANDONMENT OR DESERTION OF CHILD.
In proceedings under 2 Comp. Laws 1929, § 8208 *et seq.*, to compel natural son to support dependent mother, evidence on part of son *held*, insufficient to establish that he was abandoned or deserted by his mother within meaning of section 8226, releasing him from obligation to support her.

3. SAME—EXCESSIVE AMOUNT FOR SUPPORT OF PARENT.
Court's order requiring natural son to pay $10 per week for support of dependent mother, *held*, not excessive, under circumstances, and especially in view of fact that, if it should become overburdensome, court has power to change order (2 Comp. Laws 1929, § 8214).

4. SAME—APPEAL AND ERROR—HARMLESS ERROR.
Error in unduly restricting cross-examination of dependent mother on question of her abandonment of natural son does not require reversal of order requiring him to pay for her support, where from his own testimony it appears that he was not prejudiced by said error.

Appeal from Kent; Dunham (Major L.), J. Submitted November 7, 1931. (Docket No. 229, Calendar No. 35,902.) Decided January 4, 1932.

Petition by Ashley Ward, superintendent of poor of Kent county, against Gustav Mayer in the probate court to compel contribution to the support of defendant's mother. From order for plaintiff, defendant appealed to circuit court. Judgment affirmed. Defendant appeals. Affirmed.

*Bartel J. Jonkman,* Prosecuting Attorney, and *Albert H. Adams,* Assistant Prosecuting Attorney, for plaintiff.

*Freeman W. Haskins,* for defendant.

NORTH, J. A superintendent of the poor for Kent county petitioned the probate court of said county to require Gustav Mayer, herein called the defendant, to contribute to the support of his mother, Marie Shassberger, as a dependent person within the meaning of Act No. 146, Pub. Acts 1925, being 2 Comp. Laws 1929, § 8208 *et seq.* From the order of the probate court requiring him to make weekly contributions towards the support of his mother, the defendant appealed to the circuit court. Upon hearing in the circuit, it was ordered that the defendant pay $10 per week. Defendant has appealed.

The defense mainly urged is that the defendant was abandoned by his mother before he arrived at the age of 16 years, and therefore he is not liable under the statute to contribute towards her support. The defendant also urges that the amount ordered to be paid is excessive. The statute under which this proceeding is brought in part provides:

"No person shall be required to furnish a parent with shelter, food, care, and clothing if it is proven that such parent abandoned, deserted or wilfully refused or neglected to support and maintain him while

an infant under sixteen years of age. This act shall be deemed to create a liability as follows:

"(a) Sons or daughters shall be liable for the support of their dependent parent or parents to the extent hereinafter mentioned;

"(b) A parent shall be deemed to be dependent where, by reason of age, disease, or infirmity, he is unable to maintain himself." 2 Comp. Laws 1929, § 8226.

Mrs. Shassberger is 84 years of age, practically blind, and feeble physically and mentally. She has a life estate in a residence property which rents for $25 per month. Her condition is such that she needs personal care and attention which defendant has not and for obvious reasons cannot give to her in his own home. Prior to these proceedings she was taken to a public institution for care, but subsequently placed in a private home, where, at the time of the hearing in the circuit court, she was being cared for at an expense of $10 per week. There is no question but that she is a dependent person within the meaning of the statute.

Touching defendant's claim of having been abandoned by his mother, the following facts are pertinent: Mrs. Shassberger is a native of Germany. While residing there she lived with a man by the name of Wolf without the formality of a marriage ceremony. Gustav Mayer was born to these parties while so living together. It is the claim of Mrs. Shassberger, and her testimony is not disputed, that because Wolf was a drunkard she was compelled to leave his home. This she did when Gustav was about three years of age. She told Wolf she was leaving for America and he must look after Gustav. Mrs. Shassberger came to this country and shortly after her arrival married Mr. Shassberger. Evi-

dently they were people of limited means. Notwithstanding this, from time to time Mrs. Shassberger sent money to Germany either to Gustav or his brother. The amounts were small, but the record does not disclose that Mrs. Shassberger was able to send more. Mr. Shassberger died about 15 or 16 years after his marriage to Mrs. Shassberger. Shortly after his death Mrs. Shassberger sent for Gustav to come to America, and furnished him with the money with which to pay his passage and entrance into this country. He arrived in Grand Rapids in February, 1909. He was then nearly 19 years of age. From that time he and his mother lived together in the same household for substantially 20 years, when she was taken in charge by the public authorities. Aside from his mother's contribution, Gustav, while in Germany, was maintained, as he testified, by means derived from his "father's estate." He and a brother were reared on a farm, and when Gustav was 15 or 16 years of age he began to learn the shoe trade. He was working at his trade when his mother sent for him. Without reciting further details which appear in the record, it is sufficient to note we are of the opinion that defendant has not established his claim of having been abandoned by his mother. Mrs. Shassberger's testimony disclosed that she was justified in severing her relations with the man Wolf. She evidently kept in touch with her children, and, so far as her means permitted, contributed to their maintenance. It is fair to infer as soon as she was able to do so she provided the means of bringing Gustav to her home in America; and they have continued to live together for years. Abandonment or desertion within the meaning of the statute has not been established.

Touching the claim of defendant that the amount ordered by the circuit judge to be paid is excessive, it may be noted that defendant's conduct, when testifying in the circuit court, was not to his credit. His ability to pay, as well as the extent of his mother's needs, were material questions. The lack of frankness and fairness on the part of the defendant is indicated by the following from his testimony:

"*Q.* Haven't you some money put away, money in the bank?

"*A.* Who wants to know?

"*Q.* Have you Consumers Power stock?

"*A.* Yes, but I don't know how much.

"*Q.* You don't know whether you have 1,000 or 500?

"*A.* I had so much trouble my mind is all mixed up.

"*Q.* Haven't you any other securities?

"*A.* I am paying insurance; that is all I know.

"*Q.* How much insurance have you?

"*A.* I don't know.

"*Q.* Who receives the benefit of this insurance, who is the beneficiary?

"*A.* I am myself.  *  *  *

"*Q.* You haven't told us what the value of your securities, your stock is, whatever stocks you own?

"*A.* I don't know. I have got to figure that up myself.  *  *  *  It would not hurt me to work for somebody else, but I could not find a job."

Defendant owns the remainder interest in the property in which his mother has a life estate. He also owns other residence property from which he receives a monthly rental of $25 or $30. He is a man in middle age, has a trade, and is able to work, though presently not employed. For months preceding the hearing in the probate court, he had appropriated for his own use the rental income from

the property in which his mother has a life estate. He testified the money was used in making improvements on this property in which he has the remainderman's interest.

It is urged in appellant's brief that the amount he has been ordered to pay is in excess of the actual needs of his mother, in view of the fact that she is now receiving the rentals from the property of which she is the life tenant; and also that the contributions in the amounts ordered will eventually pauperize defendant. We are not favorably impressed with either of these claims. It is fair to assume that the court making the order had all the facts and circumstances fully in mind, including the statutory provision which empowers the court to subsequently alter the order if found to be overburdensome to the one required to make the contributions. 2 Comp. Laws 1929, § 8214.

It is urged in behalf of appellant that the circuit judge unduly restricted the cross-examination of Mrs. Shassberger touching the circumstances under which she left defendant in Germany, this bearing upon the question of abandonment and desertion. This cross-examination related to a material question in the case; and while it appears to have been somewhat unduly restricted, we are satisfied from defendant's own testimony that it did not result in prejudicial error.

The judgment of the circuit court is affirmed, with costs to appellee.

CLARK, C. J., and McDONALD, POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred.